In this case, Ms. Alvarez-Mora showed up for her hearing and at the time that it came for the government's counsel to put on their case, since the judge determined that since Ms. Mora is a lawful resident alien, that the government had the burden to establish by clear, convincing, and equitable evidence that she was an alien smuggler, i.e. fighting her niece. And the trial attorney informed the court, Your Honor, I don't have my witnesses. Can I continue the case? And the court did not rule on it. Ms. Alvarez, through her counsel, asked to dismiss the case, moved to dismiss, Your Honor, based on the government not being able to prove their case by clear, convincing, and equitable evidence. And then the court went on. You're the counsel. Yes, Your Honor, I was the counsel. It sounds like you're talking about somebody else. No, I'm the counsel, Your Honor, yes. Yes, and the, yeah, I'm the monitor in the particular record, Your Honor. And the, we objected, Your Honor, said, well, you know, the I-213 is hearsay evidence. In fact, it has double hearsay at one point, and we do not believe that, that it has opinions and conclusions at that record. I'm sure you've read the Espinoza case many times. Yes, Your Honor. The Espinoza case seems to stand for the proposition that the I-213 is admissible in these proceedings so long as there's no allegation that it contains erroneous information. The problem. How do you get around Espinoza? Yes, Your Honor, the problem I have with Espinoza is that credibility is always at issue. In this case, the government has the burden to establish their case by clear, convincing, and equitable evidence. Yeah, but did you file anything anywhere at any time claiming that any of the information in the I-213 is not accurate? I couldn't find an attack on the accuracy of the information in the form. What we filed, Your Honor, was a motion to suppress based in part on the fact that the I-213 indicates that she did not cross the border and went on several blocks across the border and then somehow ended up back at the border and made contact. And it's a jurisdictional question there. If she made it across the border, then customs loses jurisdiction and it's got to be handled by. You're saying that essentially you challenged everything in the I-213 as being wrong, because the I-213 doesn't square with the story that you were presenting to court. Well, that's correct, because as you point out in the brief, there's two versions as to how she came. She either crossed or she didn't cross. That's correct. And as the case from the BIA states, it's a jurisdictional question. And if she crossed, then it's removal in the matter of deportation. If she didn't cross, then it's exclusionary, essentially, even though under the new act it's not different. But it's very practical differences at the port of entry now because, for instance, one of them is that if you cross, if you're in removal, deportation proceeds. The immigration judge said in connection with your motion, quote, there have been no allegations that this information is incorrect or unreliable. You would dispute that. You'd say your entire case was this information. That's correct. And we would say that if some party has the burden of proof, then part and parcel of that case is credibility. So the case is always whatever document you introduce, whether it's the I-213 or, let's say, a sworn statement taken by videotape or otherwise, then there's always credibility as to that officer, that what he wrote down or what was stated is actually what was in it. There was no foundation laid. And when did you object to it? Well, the objection originally, Your Honor, as to that she had made her cross was based on the motion, the written motion to terminate. Then later on at the trial, which was prior to the trial, at the trial we objected to the I-213 based on hearsay and legal opinion and conclusions, and that no foundation had been set to it. But it's well established that the formal rules of evidence that might apply in a criminal prosecution, in a court, don't apply in administrative proceedings. Isn't that right? That's correct, Your Honor. But if something is so gross, then, again, I would say that due process requires that, for instance, in the recent case of Crawford v. Washington, that he be given the opportunity to confront those witnesses. She didn't have it at the port of entry. She wasn't even told about her right to an attorney at the initial detention when she was stopped. So it would be our position that due process in this case requires that she be given the opportunity at some time prior to this evidence coming to the evidence, Your Honor, to examine this evidence, to make sure that it is, in fact, there's a foundation and that it is, in fact, true. Okay. Thank you, Your Honor. That's basically your argument. Yes, that's basically our argument. Yes, thank you. May it please the Court. My name is Jason Patil, and I represent the Respondent in this case. This petition for review arises out of the unfortunate actions of the petitioner, who less than two years after receiving resident status under the Nicaraguan and Central American Relief Act, known as NACARA, chose to travel to Tijuana to meet an individual from her extended family for the purpose of assisting that person in violation of law to come to the United States. We understand that, but the question is the I-213 form. The first issue is whether the immigration judge properly admitted the Form I-213 in this case, and the Respondent submits that its admission was proper because it is controlled by the law of this circuit in Espinoza v. INS, which has held that a certified Form I-213, and this form was certified pursuant to delegated authority by the district director. That's Administrative Record 175 and 177, is an inherently trustworthy document that the petitioner has no right to cross-examine the preparer of, unless... Unless. Unless, as you have pointed out, that the petitioner satisfies a burden. His burden for showing that document should be excluded, because there are substantial reasons to believe that the I-213's demonstration that the applicant is inadmissible have, that there are substantial questions about the accuracy of that statement, and in this situation, that has not been established. As a preliminary matter, all of the petitioner's arguments raised in the briefing regarding alleged due process violations in the taking of this statement are not properly before this Court. The sole and exclusive objections which were identified in the petitioner's opening statement here related to the fact that the statement contained hearsay, and that it contained an opinion and legal conclusion. That statement describes every Form I-213 that exists. It is, of course, hearsay. And to the extent that an I-213 contains an opinion and a legal conclusion, that is, on this record, is the ultimate two statements, two sentences in the I-213, that says, I believe it appears that the alien is excludable for this reason, and for that matter is referred to the Immigration Court for determination. But hearsay, it is not a sufficient objection for the exclusion of the document. That's the law of this circuit in Trias-Hernandez v. IMS. And the test, and only test that's important here, is that the evidence in the Form I-213 is probative and that it is fundamentally fair. And in this case, there is no demonstration by the petitioner that the evidence was taken in violation of any sort of due process or that it was unfair to be used against her. In fact, and I emphasize this point, which is made by the Board of Immigration Appeals and the immigration judge, there is really no discrepancy or contradiction between the evidence in this case whatsoever with respect to the fact that the alien petitioner made this choice to go and assist a distant family relative into the United States in violation of law. The only point to which there is any contradiction at all is whether or not she had been waved through primary inspection and made some sort of entry into the United States. The immigration judge, however, relying upon four pieces of evidence of record, the Form I-830, the form to indicate that she was paroled into the United States, not admitted, the form in her passport, the admission stamp from a month earlier to show that when she did make an entry into the United States on a previous occasion, the practice was to stamp in that individual as being admitted, and the Forms I-94 and, of course, the Form I-213, the admissibility which was being disputed by the petitioner, also show that that individual was not admitted into the United States. Now, it's important to note, and the Respondent has conceded this, that because the alien petitioner in this case was lawfully admitted for permanent residence, the standard in removal proceedings is the same whether she is charged under Section 212 or Section 237. And that is that the government must show by clear, unequivocal, and convincing evidence that she is removable on the charges as alleged in the charging document. And in this case, again, there is no dispute that with regard to those facts set forth in I-213 regarding that she assisted or aided. She was trying to help her niece come into the United States to be with her family that was here. That is correct. And when I say the Respondent understands, it is an unfortunate circumstance that after this individual had earned permanent residence, less than 24 months later she made the judgment that, presumably believing that she would be able to do it successfully, assist this person in with a birth certificate. She was caught? They were caught at the port of entry. The niece, as described in I-13, had a birth certificate, which was a real birth certificate, but was someone else's birth certificate that they obtained. And where did the niece get that bogus birth certificate? The niece had obtained the bogus birth certificate from unidentified relatives in the United States. The alien petitioner in this case, in the form I-213, it's disclosed that she knew that the birth certificate didn't relate to this individual, and when she went to meet her in Tijuana, when the niece got off at the airport, knew that that was the plan in order to procure entry into the United States. And in this case, those facts come into conjunction with the fact that they were caught, that at primary inspection they realized the birth certificate did not relate to the individual, and they referred them to secondary for an interview. And the I-213 is very explicit with regard to these facts. The second issue in this case, whether substantial evidence supports the immigration judge's determination, once there is a judgment that the I-213 comes in, the evidence there is unequivocal because the alien petitioner in this case acknowledges, and I think very truthfully in the I-213, though she does not testify in the proceeding asserting Fifth Amendment protections, explains what she was doing and says, we were trying to get this young lady into the United States, and I know that it was a violation of law. And where does the evidence come from that she was already in and then walked back to pick up the death certificate? Though the alien petitioner does not testify because she asserts her Fifth Amendment privilege, she submits one affidavit in conjunction with a motion prepared by Mr. Montes that states that she, and it's in the administrative record, and it's somewhat equivocal because she says she's a primary, and then she gets waived not through the border, but she says she gets waived to another line, which is consistent with the I-213, but she's waived to secondary. The next statement in the affidavit says she believes then that that means that she was admitted to the United States and was entitled to, you know, made an entry at that point. And that then she was walked back to this point northerly to the point of entry, at which point she was interviewed. Those facts in the affidavit are not, and I understand they allege a contradiction, and the immigration judge tries to rectify those two accounts. But when you read the affidavit in conjunction with I-213, there's the initial event at primary, there's a referral not to be admitted into the United States, but to another line. And then from there, she goes, she doesn't say under what conditions in the affidavit, she returns to a point north to the point of entry, and then are interviewed. There's not necessarily a profound contradiction between these two things. And importantly for the immigration judge's decision, there was never any stamp or document recognizing that she was actually admitted to the United States. Kagan. Is this all at San Diego? Yes. At and around that area. And the immigration judge relies upon those four pieces of evidence I laid out earlier, recognizing the potential contradiction, but then looking at that evidence and finding it, it's pretty clear that she may have felt she had made an entry, but if the authorities refer you to secondary and they make you wait and they turn you around to a different position to go have an interview, that that does not establish that you've been admitted. But I would reemphasize the point, and I see my time is waning. In the affidavit, does she deny knowing anything about the birth certificate and the plan to smuggle Denise in?  No, she does not. There are, as I say, are no, there's no evidence of record which contradicts those statements in the I-213. In this case, you know, on advice of counsel, she also does not testify to that at the hearing. The immigration judge in this case obviously based her decision not with reference to, you know, drawing a negative inference from silence just on the I-213 and these other documents with respect to whether there was an admission. And with that, that concludes Respondent's argument. I appreciate the time from this Court today in what is apparently an unfortunate case, and I appreciate the opportunity. I believe the petition for review should be dismissed. It was a very lively argument. Thank you. Thank you, Your Honor. Yes, very briefly. Yes. If we look at page 207 of the record, there Ms. Alvarez denies factual allegations one and seven that she had at any time smuggled. And at every time up to this, since the beginning of the case up to this time, she has continued to deny that point and put the Does she deny that she was aware of a plot to smuggle the niece in using somebody else's birth certificate? She's denied it. Yes, Your Honor. She's denied up to this point. And if the her declaration Then why did she say that to the officers who prepared the I-213? Does she explain that? Or does she deny saying it to them? Well, that's the question I'd like to ask the officers had they shown up to testify. Does she deny saying it to them? Well, Your Honor, at this point, we would say that we deny all those because we don't have to answer that question because it's the DHS's burden to establish So you're putting them to their burden of proof. Exactly, Your Honor. And as to the parole document, obviously, I understand there's some legislation that by the year 2008, both in Canada and Mexico, that we're going to have passports that are going to be stamped as a procedure. There's no such procedure. And it's common knowledge. You can either border cross a card or some You can use many documents and they're not stamped. I mean, you know, they're just not to cross the sentencing report of entry, Your Honors. And now the INS says that the document is probative and fundamentally fair, Your Honors. But where you only have an I-213, and that's the sole piece of evidence you rely on to establish your burden, we're saying that that is not fundamentally fair. She should have been allowed to cross-examine those officers. Thank you, Your Honors. The case just argued is submitted for decision. We'll hear the next case, which is Lisby versus the Attorney General Gonzalez. Mr. Ige, you may proceed.
judges: Schroeder, Pregerson, Trott